[Civ. No. 6946.   Third Dist.   May 3, 1943.]

RECLAMATION DISTRICT NO. 1500 et al., Petitioners, v. GERALD F. RAUB, as County Treasurer, etc., Respondent.

Downey, Brand & Seymour for Petitioners.

Loyd E. Hewitt, District Attorney (Sutter), for Respondent.

ADAMS, P. J.—Plaintiffs made an original application to this court for a writ of mandate to compel the respondent, County Treasurer of Sutter County, to execute a certain oil and gas lease on land conveyed to him as trustee of the Bond Fund and of the district. An alternative writ issued. Respondent has interposed a general demurrer to the petition.

The lands involved belong to the district, as they were sold to the county treasurer for delinquent assessments under the bond issue of the district; and time for redemption has expired. The board of trustees has elected to lease the lands under what is known as a community oil and gas lease, and has passed a resolution requesting respondent to execute the lease. Respondent has refused on the sole ground that section 3466a of the Political Code does not authorize the making of such a lease, the lands being agricultural lands situated wholly within an agricultural community in which no oil or gas field has been developed. He does not question the authority of the trustees to lease the lands for agricultural purposes, but questions their right to lease for other than agricultural purposes.

Section 3453 of the Political Code provides that the board of trustees of a reclamation district constitutes the board "for the management of the affairs therein." Section

3454 of said code defines the powers and duties of said board of trustees; and subdivision 10 thereof authorizes them "To sell, convey, transfer, lease to others or otherwise dispose of such real or personal property belonging to the said district which said board of trustees shall find no longer necessary for the construction, maintenance or operation of the works of reclamation of said district; . . . " Section 3466a of said code contains a provision reading:

"After the lapse of one year from and after the expiration of the period of redemption of any land sold to the district, or county treasurer as trustee for the district, either pursuant to the provisions of sections 3466, 3480 or section 3480a of this code, the county treasurer of the main county, when and as directed by the board of trustees of the district, may in their discretion then sell the whole or any part of any tract of land remaining unsold to the highest bidder for cash. . . . "

Also:

"The trustees of the district shall have the management and control of, and right to lease out to a tenant or tenants for such reasonable rental and upon such terms as such trustees may deem advisable, any and all lands in the district which have been sold to the county treasurer, as trustee, for delinquent assessments, where the time for redemption has expired and said lands remain unsold and to receive and collect the rental for the same."

The foregoing sections, then, authorize the trustees of a reclamation district, either to lease or to sell lands such as are involved in this proceeding. The purposes for which they may lease or sell are without restriction, and we are convinced that the trustees are, therefore, authorized to lease such lands for oil and gas purposes.

Respondent's sole reliance is upon *Stone* v. *City of Los Angeles,* 114 Cal.App. 192 [299 P. 838], wherein it was held that defendant city was without authority to lease for the drilling for oil and gas, tide and submerged lands which had been granted to it by the state. The grant there provided, however, that the lands should be used by the city solely for the establishment, improvement and conduct of a harbor, and for the construction of wharves, docks, piers, etc., necessary or convenient for the promotion and accommodation of commerce and navigation; and the city was specifically forbidden to grant, convey, give or alien said lands to any individual,

firm or corporation for any purpose whatsoever. It was, however, authorized to grant franchises for a limited period for wharves and other public uses, and to lease for a limited period ''for purposes consistent with the trust upon which said lands are held by the State of California, and with the requirements of commerce and navigation at said harbor. . . . '' The court there held that an oil and gas lease differs from an ordinary lease; that the lessee of oil land has a different and greater interest in the property than is given by the ordinary usufructuary lease, in that the right of a lessee under an oil and gas lease extends to the extraction of a certain part of the substance of the land itself and its removal and conversion; and that the object of such a contract is, in effect, if not technically, a sale and conveyance of a substantial and specific part of the land, at least a disposition and transfer thereof. The court also said that at the time of the grant oil had not been discovered in the vicinity of the lands sought to be leased, and that the Legislature, in giving the right to lease, did not have in mind that the property should be leased for any purposes other than those incident to the development of a harbor; and that this conclusion was strengthened by the clause in the granting act prohibiting alienation of the lands.

We find nothing in that decision supporting respondent's contention herein. The lands which petitioners propose to lease they are authorized to sell. Therefore, whether an oil and gas lease does or does not effect the conveyance of a part of the land itself, or a greater interest in the property than is conveyed by the ordinary usufructuary lease, is unimportant. No question is raised as to the terms of the proposed lease, or that it would not be beneficial to the district and its bondholders. And as to the argument that leasing of such lands for the extraction of oil and gas is not authorized because it was not within the contemplation of the Legislature that it might be leased for such purposes, and that the Legislature contemplated that it should be leased only for agricultural purposes, we find nothing in the statutes suggesting any such limitation. Conceding that the lands are primarily agricultural lands, if they were sold outright no such limitation upon their use could be imposed upon the buyer.

In *Williams* v. *McKenzie*, 203 Ky. 376 [262 S.W. 598], where property was conveyed to a school district with a provision that it should revert to the grantor when no longer

used for common school purposes, it was held that the district had a right to execute an oil lease on the land, as it was still being used for such school purposes. The court said that the grant placed the unlimited and unrestricted use of the property in the grantees until such time as, if ever, the event happened which would terminate the estate conveyed, and that such estate carried with it the unlimited right to use and control the property before the happening of the event. It also said that under the statutes of Kentucky the board of school trustees had authority to "take, hold and dispose of real and personal estate for the maintenance, use and benefit of the common school of their district," and that if such trustees had the right to hold and dispose of real estate they were authorized, in the interest of education, to execute a lease upon such school property for the extraction of oil and gas, especially because, oil and gas being fugacious, adjoining landowners might otherwise benefit at the expense of the district.

As to the decision in *Stone* v. *City of Los Angeles, supra,* the Supreme Court decided in *City of Long Beach* v. *Marshall,* 11 Cal.2d 609 [82 P.2d 362], that plaintiff city was authorized to drill for oil on tide and submerged lands which it had acquired by grant from the state in trust for harbor purposes and upon express condition that they should be used solely for such purposes, holding that the municipality had acquired a fee simple title, had become the owner of the minerals therein, and that there was nothing in the grant which purported to deny to it the right to extract them. To be sure, in that case the court pointed out that the charter of the city authorized it to drill for and extract oil from its tidelands; but it also pointed out that the conclusion reached in the Stone case that an oil lease is an unlawful transfer of tidelands, is contrary to the holding in the later case of *Boone* v. *Kingsbury,* 206 Cal. 148 [273 P. 797].

At the close of his argument before this court it was suggested by counsel for respondent that the execution of the proposed lease would, in some manner not stated, affect the bonds issued by the district, which bonds were issued before the enactment of section 3466a of the Political Code. However, the bondholders have interposed no objection to said lease, and, though at the conclusion of the argument, at the suggestion of counsel, this court allowed twenty days within

which said bondholders might file briefs in opposition to the writ, we were thereafter advised that they did not desire to appear in the proceeding; and they have filed no briefs.

The petition before us alleges that the sole ground upon which respondent refuses to execute the proposed lease is that section 3466a does not authorize the making of such lease; and in his points and authorities in support of his demurrer counsel for respondent agrees that whether or not said section gives such authority is the sole point to be determined. Also the petition alleges ''That said lease, if consummated, will produce substantial additional revenue for the District bond fund over and above what would be produced if said lands were leased or rented solely for agricultural purposes and will increase the sale value of said lands. That said lease will not in any degree detract from the value or use of said lands for agricultural purposes. That said lease is to the benefit and best interests of the District and the bondholders thereof. That it is customary in the Sacramento and San Joaquin valleys and elsewhere in the State of California where such leases are obtainable, to lease agricultural lands under community oil and gas leases. That the form lease hereto attached is exceptionally favorable to the lessor District and the landowners and bondholders thereof.'' The truth of this allegation is admitted by the demurrer of respondent. Any other objections should have been raised by way of answer to the petition. However, it was agreed by counsel for respondent at the argument that if his demurrer were overruled the writ might issue.

The demurrer is overruled and a peremptory writ will issue.

Peek, J., and Thompson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 1, 1943.